# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION
## DOCKET NO. 3:10-cv-00077-W

| | |
|---|---|
| ANNE E. REID-LAMB, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>) **ORDER**<br>TIME WARNER ENTERTAINMENT )<br>COMPANY, LIMITED PARTNERSHIP )<br>d/b/a TIME WARNER CABLE, INC., )<br>)<br>Defendant. )<br>) | |

THIS MATTER is before the Court on Defendant's Motion for Summary Judgment (Doc. No. 39) on each of Plaintiff's claims and on Plaintiff's Motion for Summary Judgment (Doc. No. 37) on Defendant's counterclaims. The motions have been fully briefed (Docs. Nos. 38, 40, 44-49), and the Court conducted a hearing on April 14, 2011, wherein both parties presented oral argument to the Court. This matter is now ripe for disposition. For the reasons announced in open Court and those that follow, both motions are GRANTED IN PART and DENIED IN PART.

### I. BACKGROUND

Both parties have moved for summary judgment, albeit on different claims. Thus, for purposes of the Court's analysis of the allegations in the complaint, the Court construes the facts in the light most favorable to Plaintiff as the non-moving party. Georgia Pacific Consumer Products v. Von Drehle Corp., 618 F.3d 441, 445 (4th Cir. 2010) (citing Garofolo v. Donald B. Heslep Assocs., Inc., 405 F.3d 194, 198 (4th Cir. 2005)). In regards to the analysis on the counterclaims, however, the Court construes the facts in the light most favorable to Defendant as the nonmoving party. Id.

Plaintiff Anne Reid-Lamb, born in March 1968, was employed in the Human Resources department of Defendant Time Warner Cable, Inc. In March 2006, Defendant hired Plaintiff to work as the Manager for Compensation in the company's Human Resources ("HR") Group. At the time, she reported to Director of Compensation Mark Zirkle and was peer to Jim Jensen, another Manager of Compensation. In April 2007, Defendant promoted Zirkle to Senior Director and Jensen as Director of Compensation. Plaintiff reported to Jensen in his new role. Zirkle eventually left his employment with Defendant after he applied for and did not receive a promotion.

In September 2007, Plaintiff and Jensen met and agreed that her career plan would include placement in a leadership career track. In January 2008, Defendant, upon Jensen's recommendation, promoted Plaintiff to Senior Compensation Manager. In this role, Plaintiff and her colleague Jason Cheney shared responsibility for supporting the compensation function for Defendant's field employees. In December 2008, Plaintiff advised her supervisor, Jensen, that she was pregnant and would be taking maternity leave for July and August 2009.

The parties agree that Defendant placed Plaintiff into a special projects role in late February 2009. The parties disagree, however, as to the reason for doing so. Plaintiff contends that around February 20, 2009, Jensen told her that he was taking her out of management and the leadership track because his manager, Paul Giles, who was General Vice President of Compensation/Benefits, had concerns about her ability to manage a team while she was on maternity leave. Plaintiff also asserts that Defendant set her up to fail in this position, as evidenced by Giles' comment, "When [Plaintiff] fails miserably in this job, we'll need to figure out what to do." Defendant contends that Giles, Jensen and Tom Mathews, who was the Executive Vice President of HR, began working on a reorganization of the HR department beginning back in March 31, 2008, well before Plaintiff had informed Defendant of her pregnancy. As part of the reorganization plan, the HR compensation

group was divided into two areas: operations and special projects. Defendant assigned Plaintiff the special projects role, while Cheney, a 32 year old male, was tasked with leading the operations side, which Plaintiff contends constituted a replacement of her in her former position. Defendant asserts that Plaintiff, however, had more accountability and greater leadership involvement in her new position and that she was selected for the special projects role because of her experience and seniority. After the reorganization, two employees who used to report to Plaintiff reported to Cheney, while Plaintiff had no employees reporting to her.

On March 4, 2009, Plaintiff filed a charge against Defendant with the Equal Employment Opportunity Commission ("EEOC") alleging she was demoted based on both sex /pregnancy and age discrimination under Title VII. Plaintiff also asserted a claim for a hostile work environment based on an incident where Jensen (in Plaintiff's presence) referred to another female employee as "She's a blank and it rhymes with blunt." On other occasions, also in Plaintiff's presence but not in reference to her, Jensen referred to some female employees in a derogatory manner, including using the phrase "bitch." Plaintiff also contends that Jensen created a hostile work environment because he participated in "soda time" with male co-workers to the exclusion of females. "Soda time" is the phrase used to refer to the occasions when Zirkle (Jensen's boss at the time) and Jensen would get a soda together in the break room during the workday and discuss business. Defendant presents evidence that "soda time" was not exclusive to men and that women attended on occasion.

After Plaintiff filed her complaint with the EEOC, she complained to Jensen that she believed she had been taken out of her management role because of her sex and because of her pregnancy. Plaintiff says that in response, Jensen told her she needed to "stop playing the female discrimination card" and that Giles was not "going to put up with any whining" or "pouting."

Plaintiff also lodged an internal complaint with Defendant's in-house counsel, and Defendant subsequently began an internal investigation.

Plaintiff asserts that after she filed her complaint with the EEOC and in an effort to encourage Plaintiff to leave Defendant's employ, Giles offered on two occasions (once in May 2009 and again that August) to assist Plaintiff in finding other employment outside Defendant's HR department. Plaintiff also contends the hostile work environment continued after filing her initial charge. On March 6, 2009, Defendant's Corporate Vice President of HR, Tom Mathews, sponsored a party for another HR Vice President, Seth Feit, to celebrate his departure from the department. At this "good-bye" celebration, a "lewd and sexually-charged song" entitled the "Humpty Dance" was played and performed with props to illustrate the lyrics of the song.

Sometime between March 4, 2009, and April 29, 2009, and in connection with her claims of sex and age discrimination, Plaintiff compiled an analysis attempting to show that Defendant engaged in a pattern of discriminatory practices in the areas of promotional opportunities and compensation. Specifically, Plaintiff accessed personnel data in Defendant's databases and created graphs showing the rates of compensation and promotion for herself as compared to Jensen, Cheney, and Director of Executive Compensation Jeff Hilton. Plaintiff also performed a statistical analysis using compensation data for Defendant's non-executive Corporate HR personnel located in Charlotte comparing salaries for female and male counterparts. Additionally, Plaintiff prepared and submitted to the EEOC a non-statistical narrative containing personnel information comparing herself and other female employees to comparators. Plaintiff did not provide the EEOC with graphs, the statistical analysis, or the actual compensation data from which the statistical analysis was derived. On April 29, 2009, Plaintiff amended her original charge of discrimination to assert the contention that Defendant discriminated against women as a class.

In May 2009 and as part of the internal investigation, Plaintiff presented her prepared analysis of compensation data to Defendant's general counsel for the purpose of demonstrating a pattern of sex and age discrimination related to her EEOC claim. Plaintiff admits she accessed this data using her system authorization as manager of Defendant's pay equity program. Defendant's general counsel asked Plaintiff to provide a copy of the compensation data, but Plaintiff refused and instead directed Defendant's general counsel to contact her attorney. During these conversations, neither Defendant's general counsel nor other staff investigating Plaintiff's claims told Plaintiff she had violated company policy or that she could be terminated for having accessed the compensation data of her comparators. Defendant contacted Plaintiff's attorney on several occasions, but the return of the data did not occur until September 14, 2009.

Plaintiff began her maternity leave on June 18, 2009. Prior to her leave, Defendant hired Joyce Scroggins, a forty-five year old female, to temporarily take over Plaintiff's job duties while she was out on leave. In August 2009, while Plaintiff was on maternity leave, she admits she used her company-issued laptop to access compensation data and perform an analysis related to her discrimination claims.

Plaintiff returned to work on September 1, 2009. By correspondence dated September 8, 2009, Defendant once again demanded the return of data compensation materials from Plaintiff's attorney, who attests via submissions to this Court that she complied on September 14, 2009, and requested Defendant to not destroy the data or remaining copies of Plaintiff's analysis. On September 24, 2009, Defendant suspended Plaintiff with pay pending investigation of a possible violation of company confidentiality in connection with the compensation materials previously provided to the EEOC and her attorney. Defendant terminated Plaintiff's employment on October 5, 2009, and hired Scroggins to replace her.

After receiving a right to sue letter from the EEOC, Plaintiff filed her Title VII claim in Mecklenburg County Superior Court, and Defendant removed to this Court. Plaintiff asserted causes of action for: (1) sex/pregnancy discrimination in both Plaintiff's "demotion" and termination; (2) sex discrimination (hostile work environment); (3) sex/age discrimination regarding pay (Equal Pay Act); (4) retaliation; (5) age discrimination for termination; and (6) wrongful discharge/violation of state public policy. Defendant subsequently filed five counterclaims, two of which were dismissed by this Court following a motion by Plaintiff. (Doc. No. 24). The remaining counterclaims include: (1) violation of the federal Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030(a)(2)(C); (2) violation of N.C. Gen. Stat. § 14-458 9, which prohibits "computer trespass"; and (3) breach of contract.

Defendant has moved for summary judgment on each of Plaintiff's claims, and Plaintiff has moved for summary judgment on each of Defendant's counterclaims. The parties have fully briefed these motions, and they are now ripe for consideration. Notably, neither party moved for summary judgment on their own claims asserted against the opposing party.

## II. ANALYSIS

Summary judgment is appropriate if "there is no genuine dispute as to any material fact" and a party "is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986). In making this determination, we are to "view all facts and reasonable inferences therefrom in the light most favorable to the nonmoving party," which, as noted above, varies based on which claim the Court is considering. Battle v. Seibels Bruce Ins. Co., 288 F.3d 596, 603 (4th Cir. 2002); see also Georgia Pacific Consumer Products, 618 F.3d at 445.

**A.     Oral Ruling on April 14, 2011**

Following the hearing wherein both parties presented oral argument, the Court issued a partial ruling on the pending motions. To summarize, the Court denied Plaintiff's motion for summary judgment on Defendant's counterclaims under the CFAA and N.C. Gen. Stat. § 14-548 because Defendant presented ample evidence sufficient to create a genuine dispute of material fact as to whether Plaintiff exceeded her authorized access to Defendant's data.

As to Defendant's motion, Plaintiff's counsel indicated during the hearing that Plaintiff had abandoned her claims under the Equal Pay Act, as well as her claim for age discrimination, with the exception of that portion of the retaliatory discharge claim that relies on age. Therefore, the Court granted summary judgment for Defendant on those claims. The Court also denied Defendant's motion for summary judgment on the sex/pregnancy claim for her job position reassignment –or as Plaintiff refers to it, the "demotion"– because Plaintiff presented sufficient, albeit minimal, evidence for a reasonable juror to find Defendant removed Plaintiff from her management position because of her sex /pregnancy and that such reassignment constituted an adverse employment action.

The Court took under advisement the parties' motions for summary judgment on the remaining claims and addresses them in turn.

**B.**  **Sex/Pregnancy Discrimination – Termination**

Under the "First Cause of Action" in the Complaint, Plaintiff alleges Defendant "discriminatorily demote[d] and subsequently terminate[d] Plaintiff's employment because of her sex/pregnancy . . . ." (Compl., ¶ 40). As noted above, the Court has already denied Defendant's motion as to that portion of this claim alleging discrimination in Plaintiff's "demotion." In support of her discrimination claim as it relates to her termination, Plaintiff points to evidence also used to support her demotion claim. She contends Defendant deliberately placed Plaintiff into her new role with the intention that it culminate in her termination, as evidenced by Giles' comment that he had

concerns about Plaintiff's ability to manage a team while on maternity leave, as well as his statement that Plaintiff would "fail miserably in this job." Plaintiff's other evidence to support her claim for discrimination in her termination includes statements by Plaintiff's superiors that she should stop "whining," "pouting," and "playing the female discrimination card," all of which occurred after the demotion but prior to her termination. These comments, coupled with Plaintiff's evidence connecting the alleged discrimination from her "demotion" to her termination, are minimally sufficient to create a genuine dispute of material fact and withstand Defendant's motion for summary judgment as to this termination portion of the sex/pregnancy discrimination claim.

### C. Hostile Work Environment

Defendant argues Plaintiff's evidence is insufficient for a reasonable jury to find that her work environment involved severe or prevasive sex-based hostility that affected her conditions of employment. Plaintiff's evidence to establish her claim for a hostile work environment can be summarized as follows: (1) "soda time," where Jensen and Zirkle (and sometimes, as Defendant points out, other employees, including women) would have a soft drink at work to discuss business; (2) an incident where a Corporate HR Vice President performed a routine to an explicit song entitled "The Humpty Dance;" (3) occasional use of the term "bitch" by one manager to refer to female employees other than Plaintiff; and (4) Jensen's one-time use of the phrase "She's a blank and it rhymes with blunt" in reference to a female employee with whom Plaintiff had been having difficulties.

It is well-settled that in order to demonstrate a hostile work environment, a plaintiff must demonstrate "(1) unwelcome conduct; (2) that is based on the plaintiff's sex; (3) which is sufficiently severe or pervasive to alter the plaintiff's conditions of employment and to create an abusive work environment; and (4) which is imputable to the employer." Conner v.

Schrader–Bridgeport Int'l, Inc., 227 F.3d 179, 192 (4th Cir.2000) (citing Spicer v. Commonwealth of Va. Dep't of Corrections, 66 F.3d 705, 709-10 (4th Cir.1995) (en banc) (citing Harris v. Forklift Sys., Inc., 510 U.S. 17 (1993))). The parties appear to concede satisfaction of the first and fourth prongs, and the Court concludes no genuine dispute of fact exists to challenge the conclusion that the comments and behavior were unwelcome to Plaintiff and imputable to Defendant. As to whether the unwelcome conduct was based on Plaintiff's sex, the Court will presume that Plaintiff has established this second prong. In Ocheltree v. Scollon Productions, Inc., 335 F.3d 325, 331-32 (4th Cir. 2003), the court explained that in satisfying the second element of the test, "A trier of fact may reasonably find discrimination, for example, when a woman is the individual target of open hostility *because of* her sex, or when a female victim is harassed in such sex-specific and derogatory terms . . . as to make it clear that the harasser is motivated by general hostility to the presence of women in the workplace." (Citations and quotations omitted) (emphasis added). The Ocheltree case involved remarkably more instances (both in severity and numerosity) of unwelcome conduct directed towards the plaintiff, who was the only female in the production shop. 335 F.3d 328-31. There, the Fourth Circuit concluded that a co-worker who sang a "disrespectful and degrading song" in the plaintiff's presence, taken together with other "sex-laden and sexist talk and conduct" directed towards the plaintiff, provided sufficient evidence to support a jury finding that unwelcome conduct occurred "because of" the plaintiff's sex. Id. at 332. Although Ocheltree contained significantly more instances of harassing conduct, the Court nevertheless considers the similarities for purposes of analysis of the second prong. Taking the evidence as a whole in the light most favorable to Plaintiff, the Court therefore presumes a reasonable juror could find that the alleged conduct occurred based on Plaintiff's sex for the reasons stated in Ocheltree. Id.

Finally, as to the third prong, the Fourth Circuit has recently summarized the "severe or pervasive" requirement. In Mosby-Grant v. City of Hagerstown, 630 F.3d 326 (4th Cir. 2010), the Fourth Circuit stated:

> In measuring whether the offensive conduct is severe or pervasive enough to warrant relief, we must look at the totality of the circumstances, including: the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Faragher v. City of Boca Raton, 524 U.S. 775, 787–88 (1998) (citing Harris v. Forklift Systems, Inc., 510 U.S. 17, 23 (1993)). "[I]n the Fourth Circuit, the question of whether 'harassment was sufficiently severe or pervasive is quintessentially a question of fact.'" Hartsell v. Duplex Products, Inc., 123 F.3d 766, 773 (4th Cir. 1997) (quoting Paroline v. Unisys Corp., 879 F.2d 100, 105 (4th Cir. 1989), vacated in part on other grounds, 900 F.2d 27 (4th Cir. 1990) (en banc)). Nonetheless, Title VII does not create a "general civility code" in the workplace; it only proscribes behavior that is "so objectively offensive as to alter the 'conditions' of the victim's employment." Oncale v. Sundowner Offshore Services, Inc., 523 U.S. 75, 81 (1998); see also Baskerville v. Culligan Int'l Co., 50 F.3d 428, 430 (7th Cir.1995) ("[Sexual harassment law] is not designed to purge the workplace of vulgarity.").

630 F.3d at 335. In Mosby-Grant, the court ruled that the plaintiff's "work environment was severe or pervasive enough to sustain [her] sex claim, but *not* her race claim." Id. (emphasis added). Notably, sexist comments "were pervasive" and "were frequently made" to the plaintiff or in her presence. Id. The plaintiff also heard "dozens of references" using derogatory terms for females. Id. The court noted the sex-based harassment was "also severe and humiliating in as far as it caused [the plaintiff] significant emotional distress with [the plaintiff] openly becoming emotional at work and regularly leaving work in tears." Id. In addition, "[t]he effect and source of the [sex-based] harassment were also noticeable to [the plaintiff's] superiors . . . ." Id. In contrast, the plaintiff's evidence as to race-based harassment involved a "single incident wherein [the plaintiff] overheard racist comments, the offending recruit immediately apologized, and explained that he and the biracial recruit had been joking with one another." Id. at 336. The only other evidence of a hostile

work environment based on race involved a co-worker whose racist "repugnant remarks were made only two times in five months and, although not dispositive, his remarks were also never directed" at the plaintiff. Id. The court concluded that this evidence of race-based hostility failed to satisfy the "severe or pervasive" requirement. Id. at 337.

This Court likens the evidence of conduct complained of by Plaintiff to the evidence concerning race-based harassment rather than sex-based conduct discussed by the court in Mosby-Grant. Plaintiff points to only a few, isolated incidents involving sporadic and infrequent, yet offensive, comments not directed towards Plaintiff, although made in her presence. Additionally, Defendant's uncontradicted evidence shows that in response to Plaintiff's complaint about the playing of the "Humpty Dance" song, Defendant directed the employee to not perform the song at any of Defendant's functions. Moreover, Plaintiff fails to point to any evidence to demonstrate the unwelcome conduct rose to the level of becoming physically threatening or humiliating to her, nor has Plaintiff shown it interfered with the performance of her job duties or otherwise altered her conditions of employment.

Therefore, although a reasonable juror may find that Plaintiff suffered unwelcome conduct because of her sex and that is imputable to Defendant, the Court concludes the conduct does not rise to the level of severe or pervasive as required under law. Accordingly, Defendant is entitled to summary judgment on Plaintiff's hostile work environment claim.

**D.     Retaliation**

The gravamen of Defendant's argument in support of summary judgment on this claim is that Plaintiff cannot show a causal connection between her protected activity of filing an EEOC charge alleging sex and age discrimination and her termination. The Court disagrees. Although seven months lapsed between the time Plaintiff filed her initial charge and when Defendant fired her,

Plaintiff continued to amend her charge with the EEOC and took maternity leave, all of which tend to create a genuine dispute of material fact as to whether the protected activity related to and caused Plaintiff's termination.

Plaintiff argues that in addition to the filing of the EEOC charge, her possession of the compensation data, which she accumulated over time up until her termination, also constitutes protected activity because, according to Plaintiff, it tends to show instances of discrimination she observed in the ordinary course of her employment with Defendant. Plaintiff contends Defendant retaliated against her by terminating her employment once Defendant discovered her acquisition of the data. In response, Defendant contends this conduct violated federal and state law (as set forth in the counterclaims), and therefore, cannot constitute protected activity as a predicate for Plaintiff's retaliation claim. Because the issue of whether Plaintiff exceeded her authorized access to the compensation data remains a disputed fact to be resolved by the jury, this claim is likewise inappropriate for summary judgment.

E.   **North Carolina Equal Employment Practices Act**

To the extent the Court has already denied summary judgment for Defendant on Plaintiff's discrimination claims, the Court also denies summary judgment on Plaintiff's related claim for wrongful discharge in violation of N.C. Gen. Stat. § 143-422.2.

F.   **Defendant's Counterclaim for Breach of Contract**

In its oral ruling, the Court took under advisement Plaintiff's motion for summary judgment on Defendant's counterclaim for breach of contract. Plaintiff correctly argues the "contract" that forms the basis for Defendant's cause of action fails to satisfy the requirements under North Carolina law to constitute a binding contract. See Rucker v. First Union Nat. Bank, 389 S.E.2d 622, 624 (N.C. App. 1990) ("It is well settled in North Carolina that 'unilaterally promulgated

employment manuals or policies do not become part of the employment contract unless expressly included in it.'") (quoting Rosby v. General Baptist State Convention, 370 S.E.2d 605, 608, disc. rev. denied, 374 S.E.2d 590 (1988) (other citations omitted)), disc. rev. denied, 393 S.E.2d 899 (N.C. 1990).

Instead, the document, attached to Defendant's response in opposition to Plaintiff's motion (Doc. No. 44, Ex. 15), is more appropriately considered a policy, as evidenced by its title "Polices that Pertain to Time Warner Cable IT Users" and Plaintiff's unilateral promise stated therein where she acknowledged she understood "the above *policies* and will abide by them in my use of Time Warner Cable computer resources." (Nun Decl. Ex. A) (emphasis added). The Court summarily grants Plaintiff's motion as to Defendant's counterclaim for breach of contract.

### III. Conclusion

Both by oral order and this written Order, the Court hereby GRANTS IN PART and DENIES IN PART the pending motions for summary judgment. In sum, Defendant is entitled to summary judgment on Plaintiff's claims for discrimination under the Age Discrimination in Employment Act, discrimination under the Equal Pay Act, and a hostile work environment. Plaintiff is entitled to summary judgment on Defendant's counterclaim for breach of contract. To be clear, the only causes of action remaining to be tried before a jury include Plaintiff's sex/pregnancy discrimination claim, retaliation claim, and the related claim under state law, as well as Defendant's counterclaims under CFAA and N.C. Gen. Stat. § 14-458.

IT IS THEREFORE ORDERED that Plaintiff's Motion for Summary Judgment (Doc. No. 37) is GRANTED IN PART and DENIED IN PART.

IT IS FURTHER ORDERED that Defendant's Motion for Summary Judgment (Doc. No. 39) is GRANTED IN PART and DENIED IN PART.

In light of this Court's order dated April 19, 2011, (3:11-mc-67), the Clerk is respectfully DIRECTED to reassign this matter to another district court judge, who will calendar this matter for trial and inform the parties accordingly.

IT IS SO ORDERED.

Signed: May 17, 2011

Frank D. Whitney
United States District Judge